## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

_____

Spice Corp.,

          Plaintiff,

v.

Foresight Marketing Partners, Inc.,
Foresight Marketing Group, Inc., and
SanDisk Corporation,

          Defendants.

_____

Civil No. 07-cv-4767 (JNE/JJG)

**REPORT AND RECOMMENDATION**

This matter is before the Court on a Fed. R. Civ. P. 12(b)(6) motion to dismiss by Defendants Foresight Marketing Partners, Inc. and Foresight Marketing Group, Inc. The motion has been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1. *See* Doc. No. 8.

Defendant Foresight Marketing Group, Inc. ("Old Foresight") requests that the Court compel arbitration of Plaintiff Spice Corp.'s ("Spice") claims against it. Defendant Foresight Marketing Partners, Inc. ("New Foresight") argues for dismissal of the Complaint on its merits for failure to state a claim upon which relief can be granted. Alternatively, it requests that Spice's claims against it be arbitrated.

For the reasons set forth below, the Court recommends that Spice's claims against both Old and New Foresight be arbitrated.[1]

_____

[1] Also before the Court is Defendant SanDisk's ("SanDisk) motion to stay proceedings (Doc. No. 13). SanDisk seeks a stay of these proceedings in the event Spice is ordered to arbitrate its claims against the Foresight Defendants. The Court defers its Order on SanDisk's motion pending the District Court's disposition of this Report and Recommendation.

## I.   BACKGROUND

### A.   The Parties

Spice is a Maple Grove, Minnesota corporation.  It is a manufacturer's sales representative, contracting with manufacturers to sell their products.  *Complaint*, ¶ 1.

SanDisk is a Delaware corporation with its principal place of business in Milpitas, California.  SanDisk is a multinational manufacturer of data storage devices called flash drives.[2] *Id.* at ¶ 2.

Old Foresight was a Florida corporation with its principal place of business in City of Largo, Florida.  *Id.* at ¶ 3.  Old Foresight distributed SanDisk products.  *Id.*  Old Foresight is currently registered as inactive by the Florida Department of State, Division of Corporations.[3] Marc Forsythe was Old Foresight's President.  *Id.* at ¶ 5.

Like Old Foresight, New Foresight is a Florida corporation with its principal place of business in City of Largo, Florida.  *Id.* at ¶ 4.  New Foresight distributes SanDisk products.  *Id.* Marc Forsythe is New Foresight's President.  *Id.* at ¶ 5.

### B.   The Lawsuit

Spice's Complaint contains sixteen counts.  Each count, and the Defendant or Defendants it is pled against, is set forth below:

Count I:      Conspiracy (all Defendants);
Count II:     Breach of Sales Representative Agreement as to Old and New Foresight (Old and New Foresight only);
Count III:    Breach of Sales Representative Agreement with SanDisk (SanDisk only);
Count IV:     Failure to Pay Commissions on Demand (Fla. Stat. § 686.201, subd. 3(a); Minn. Stat. 181.145, subd. 3; Minn. Stat. 325E.37, subd. 4) (all Defendants);

---

[2] The pleadings and legal memoranda do not reflect the types of products the parties manufacture and sell.  At oral argument, Spice's counsel stated that Spice sold SanDisk flash drives.
[3] Although Spice did not plead this fact, the Court can consider it as a matter of public record. *See* <www.sunbiz.org> (the Florida Division of Corporation's website).

Count V:       Failure to Provide an Accounting (all Defendants);
Count VI:      Estoppel and Ratification (Old and New Foresight only);
Count VII:     Promissory Estoppel (SanDisk only);
Count VIII:    Conversion and Constructive Trust (all Defendants);
Count IX:      Tortious Interference with Business Expectancy (all Defendants);
Count X:       Tortious Interference with Contract (all Defendants);
Count XI:      Unjust Enrichment (all Defendants);
Count XII:     Misrepresentation (all Defendants);
Count XIII:    Fraud (all Defendants);
Count XIV:     Duty of Good Faith and Fair Dealing (all Defendants);
Count XV:      Quantum Meruit (all Defendants); and
Count XVI:     Defamation (Old and New Foresight only).

The Complaint's request for relief primarily seeks payment of unpaid commissions. It also contains an alternative request for "an order requiring Defendants and each of them to arbitrate plaintiff's claims in the State of Minnesota, County of Hennepin…." *Complaint* at p. 23, ¶ 6.

In October 2007, Spice served the Defendants with a lawsuit venued in Anoka County District Court. In November 2007, it served a Second Amended Summons on Defendants, changing the venue of the lawsuit to Hennepin County District Court. The Foresight Defendants removed the suit to federal court based on diversity jurisdiction on December 5, 2007.

## C.    Events Giving Rise to the Lawsuit

On July 23, 2004, Spice and Old Foresight entered into a "Brokerage Agreement" ("2004 Agreement"), pursuant to which Spice agreed to sell SanDisk products to Spice's customers. Complaint at ¶ 7.[4] Schedule B to the 2004 Agreement lists approximately 75 Spice customers, including Cub, Sports Authority, SuperValu, and BP/Amoco.

Old Foresight and SanDisk were parties to a separate contract, pursuant to which Old Foresight agreed to recruit sales representatives to sell SanDisk's products, and SanDisk agreed to pay Old Foresight commissions on such sales. *Id.* at ¶ 6.

---

[4] Spice attached the 2004 Agreement as Exhibit A to its Complaint.

3

Old Foresight recruited Spice, and, as set forth in Schedule A to the 2004 Agreement, the two agreed that Spice would earn 4% commissions on its net sales to the Schedule B accounts. *Id.* at 11.

This arrangement appeared to work for approximately six months until January 2005, when Old Foresight stopped paying Spice commissions. *Id.* at ¶¶ 16, 17. Spice continued to sell SanDisk products under the 2004 Agreement.

In May 2006, Spice informed Old Foresight and SanDisk that its sales to its accounts in the third and fourth quarter of 2006 exceeded $13,000,000. *Id.* at ¶ 21. Spice alleges that Old Foresight and SanDisk subsequently took a series of actions designed to cut Spice out of the substantial commissions owed to it under the 2004 Agreement.

Spice alleges that in May 2006, Old Foresight and SanDisk attempted to change the terms of the 2004 Agreement to Spice's detriment, including proposing a retroactive reduction in Spice's commissions, but that Spice refused. *Id.* at ¶¶ 24, 25. Spice also alleges that Old Foresight began directly contacting Spice's accounts. *Id.* at ¶ 26.

Spice alleges that on June 1, 2006, SanDisk asked Spice to continue to represent SanDisk with respect to the Schedule B accounts, and that SanDisk guaranteed payment of the commissions due Spice under the 2004 Agreement. *Id.* at ¶¶ 28, 29.

On June 18, 2006, at SanDisk's request, Spice provided sales forecasts to SanDisk for the third and fourth quarters of 2006. These forecasts predicted sales exceeding $15,000,000. *Id.* at ¶ 30.

On July 6, 2006, Old Foresight informed Spice that SanDisk had terminated Old Foresight as a sales representative. *Id.* at ¶ 32. The termination letter from SanDisk to Old Foresight was dated June 19, 2006. *Id.*

The same day, June 19, 2006, Old Foresight's President, Marc Forsythe, created New Foresight.   Forsythe is President of New Foresight.   New Foresight allegedly has the same location, employees, officers, directors, shareholders, principal, and general business purpose as Old Foresight.   *Id.* at ¶ 35.   New Foresight now represents SanDisk on sales made to the Schedule B accounts.   *Id.* at ¶ 37.

Spice alleges that New Foresight was formed to avoid Old Foresight's obligations under the 2004 Agreement, including payment of commissions to Spice.   *Id.* at ¶ 36.   Spice alleges that it is owed over $223,000 in past due commissions.   *Id.* at ¶ 39.

**D.**     **The 2004 Agreement**

The 2004 Agreement contains the following arbitration clause:

> 15.     Law and Arbitration.   1.   Arbitration: … Any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement will be settled by arbitration in accordance with the then-existing rules of the American Arbitration Association ("AAA"), provided, however, that the arbitrator will not have the authority to change or revise any decision made by "THE COMPANY" [Old Foresight] … or "Consulting Group" [Spice] where, by the terms of this Agreement, "THE COMPANY" or Consulting Group has been given sole discretion and, provided further, that judgment upon the award rendered may be entered in any court having jurisdiction concerning this.

It also contains the following choice of law provision:

> 10.     Governing Law.   The validity, construction, effect, performance, and enforcement of this Agreement and the rights and obligations of the parties hereunder shall be governed in all respects by the laws of the State of Florida.

## II.     LEGAL STANDARD

When considering a motion to dismiss, a court construes the pleadings in the light most favorable to the nonmoving party, and the facts alleged in the complaint must be taken as true. *Hamm v. Groose*, 15 F.3d 110, 112 (8th Cir. 1994).   "A motion to dismiss should be granted as a practical matter ... only in the unusual case in which the plaintiff includes allegations that show

on the face of the complaint that there is some insuperable bar to relief." *Frey v. City of Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995).  However, to survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, --U.S.--, 127 S.Ct. 1955, 1974 (2007).

When deciding a Rule 12(b)(6) motion to dismiss, a court may consider the complaint and exhibits attached thereto, matters of public record, orders, and materials embraced by the complaint.  *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

In determining whether to compel arbitration under the Federal Arbitration Act, a court must determine whether the movant has "offered sufficient proof to 'satisfy the court that the issue involved … is referable to arbitration under such an [arbitration] agreement.'" *Express Scripts, Inc. v. Aegon Direct Marketing Services, Inc.*, 516 F.3d 695, 698 (8th Cir. 2008) (quoting 9 U.S.C. § 3).

## III.   ANALYSIS

The motion before the Court raises two primary issues:  1) whether some or all of Spice's claims against Old Foresight are subject to arbitration; and 2) whether Spice's claims against New Foresight should be dismissed on their merits or compelled to arbitration.  Each issue is addressed below.

### A.   <u>Old Foresight - Arbitration</u>

The Court first considers the scope of the arbitration clause in the 2004 Agreement.  The applicable portion of the clause states, "Any controversy or claim arising out of or relating to this Agreement or the breach of this Agreement will be settled by arbitration in accordance with the

then-existing rules of the American Arbitration Association ("AAA")....'[5]   The primary question with respect to Old Foresight is whether this broad provision encompasses all of Spice's claims against Old Foresight, including the tort claims.

The Federal Arbitration Act governs contracts involving interstate commerce.  9 U.S.C. § 2.  *See also Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 273, 281 (1995).  The 2004 Agreement is between a Florida company (Old Foresight) and a Minnesota company (Spice) for the sale of products manufactured by a California company (SanDisk).  Thus, interstate commerce is clearly involved, and no party argues otherwise.

Under the FAA, broadly worded arbitration clauses like the one at issue here are generally construed to encompass tort claims arising from the contractual relationship.  *Hudson v. ConAgra Poultry Co.*, 484 F.3d 496, 499-500 (8th Cir. 2007).  *See also CD Partners, LLC v. Grizzle*, 424 F.3d 795, 800 (8th Cir. 2005) ("Broadly worded arbitration clauses … are generally construed to cover tort suits arising from the same set of operative facts covered by a contract between the parties to an agreement.").

### 1.   Florida Choice of Law

The 2004 Agreement states that is governed by Florida law.  Thus, the scope of the arbitration provision must also be considered under Florida law.  *Id.*  ("When deciding whether the parties agreed to arbitrate a certain matter …, courts generally … should apply ordinary state-law principles that govern the formation of contracts."  (citations omitted).  *See also Northwest*

---

[5] The arbitration clause also provides that "the arbitrator will not have the authority to change or revise any decision made by "THE COMPANY" [Old Foresight] … or "Consulting Group" [Spice] where, by the terms of this Agreement, "THE COMPANY" or Consulting Group has been given sole discretion…."  Neither party has argued that this language affects the instant motion.

*Airlines, Inc. v. Astraea Aviation Srvcs., Inc.,* 111 F.3d 1386, 1392 (8th Cir. 1997) (Minnesota courts generally recognize choice of law clauses).

The Florida Supreme Court has held that "arbitration is a favored means of dispute resolution and courts indulge every reasonable presumption to uphold proceedings resulting in an award." *Roe v. Amica Mut. Ins. Co.*, 533 So. 2d 279, 281 (Fla. 1988). *See also* Fla. Stat. § 682.02 (part of Florida arbitration code) (arbitration agreements are "valid, enforceable, and irrevocable…."). Florida courts, like federal courts construing the FAA, resolve all doubts in favor of arbitration. *Ronbeck Const. Co. v. Savanna Club Corp.*, 592 So. 2d 344, 346 (Fla. Dist. Ct. App. 1992).

Against that backdrop, under Florida law three factors are considered on a motion to compel arbitration:  1) whether a valid arbitration agreement exists; 2) whether an arbitrable issue exists; and 3) whether the right to arbitration was waived. *Seifert v. U.S. Home Corp.*, 750 So. 2d. 633, 636 (Fla. 1999).[6]  The issue here involves the second factor, whether the arbitration clause encompasses all claims pled by Spice, including those sounding in tort.

In *Seifert*, the Florida Supreme Court was mindful of the strong policy favoring arbitration, but cautioned, "even in contracts containing broad arbitration provisions, the determination of whether a particular claim must be submitted to arbitration necessarily depends on the existence of some nexus between the dispute and the contract containing the arbitration clause." *Id.* at 638.  It held that for a tort claim to arise out of or relate to a contract, "it must, at the very least, raise some issue the resolution of which requires reference to or construction of some portion of the contract itself." *Id.*  Thus, Florida law could be interpreted as more restrictive than federal law with respect to whether arbitration clauses encompass tort claims. *Cf.*

---

[6] These same factors are generally considered under the FAA. *Seifert*, 750 So. 2d at 636.

*CD Partners*, 424 F.3d at 800 (broad arbitration clauses cover tort claims arising from same set of operative facts as contract between the parties).

In *Hudson*, the Eighth Circuit Court of Appeals confronted a more pronounced, but similar, tension.  In that case, a contract between a farmer and a poultry processor contained a broad arbitration clause and an Arkansas choice of law provision.  Under Arkansas law, tort claims are statutorily excluded from contractual arbitration provisions.  The arbitration and choice-of-law provisions, therefore, directly conflicted.  The court held that the broad arbitration provision controlled.  It emphasized that "any doubts concerning the scope of arbitrable issues" are resolved in favor of arbitration.  484 F.3d at 503 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)).  The court also relied on *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995), in which the Supreme Court resolved conflicting arbitration and choice-of-law provisions in favor of arbitration.  *Id.*

Similarly, here the 2004 Agreement is ambiguous regarding whether the parties intended the broad arbitration provision or the potentially more narrow Florida choice-of-law provision to control.  Under *Mastrobuono* and *Hudson*, any ambiguity must be resolved in favor of the broad arbitration provision.[7]

## 2.      Scope of Arbitration Clause

The Court next examines whether the arbitration provision in the 2004 Agreement encompasses Spice's fourteen claims against Old Foresight.  The arbitration provision's plain

---

[7] Even if the Court were to instead apply Florida law's potentially narrower test, the arbitration clause would still encompass Spice's non-contract claims.  Every such claim Spice pled requires reference to or construction of the 2004 Agreement.  *E.g., Roth v. Cohen*, 941 So. 2d 496, 500 (Fla. Dist. Ct. App. 2006) (defamation claims encompassed by arbitration clause where such claims regarding rights and obligations under the contract); *Royal Caribbean Cruises, Ltd. v. Universal Employment Agency*, 664 So. 2d 1107, 1109 (Fla. Dist. Ct. App. 1995) (claims for defamation, fraud, and business interference encompassed by arbitration clause where they had their origin in contract).

language, encompassing "[a]ny controversy or claim arising out of or relating to this Agreement or the breach of this Agreement," is very broad. The phrase "arising out of or relating to" has been interpreted broadly to encompass all claims, however labeled, which "had their genesis in, arose out of, and related to" the contract. *CD Partners*, 424 F.3d at 801 (such language covers claims of negligence, negligent misrepresentation, and fraudulent misrepresentation). *See also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (such language covers fraud claim relating to execution and acceleration of consulting contract); *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382 (11th Cir. 1996) (such language covers fraud, fraudulent inducement, deceit, misrepresentation, conversion, breach of good faith and fair dealing, and outrage claims, because all such claims were disputes originating from or connected to the underlying contract).

Each of Spice's fourteen claims against Old Foresight has its genesis in, arises out of, and relates to the 2004 Agreement. Counts II and IV specifically allege breach of the 2004 Agreement and seek payment of commissions under it. Count V demands an accounting under the agreement. Count I alleges that Old Foresight conspired with the other Defendants to breach the agreement and avoid paying commissions under it. Count VI alleges that Old Foresight ratified the agreement and should be held to it. Count VII alleges that Old Foresight stole commissions due to Spice under the agreement. Counts IX and X allege tortious interference with expectancies under the agreement and with the agreement itself. Count XI alleges that Old Foresight was unjustly enriched due to its breach of the agreement. Counts XII and XIII allege that Old Foresight lied to Spice regarding the status of the agreement and took fraudulent actions to avoid paying commissions under it. Count XIV alleges that Old Foresight breached the implied duty of good faith and fair dealing in the agreement. Count XV seeks recovery in

quantum meruit for Old Foresight's retention of commissions allegedly owed Spice under the agreement.   Count XVI alleges that Old Foresight's President defamed Spice to SanDisk via email to further his avoidance of Old Foresight's obligations under the agreement.

Thus, each of these claims stems from the agreement's language or its alleged breach. They are all, therefore, subject to the agreement's broad arbitration provision.  *See CD Partners*, 424 F.3d at 801; *Hudson*, 484 F.3d at 503*; Kroll v. Doctor's Assocs*., 3 F.3d 1167, 1170 (7th Cir. 1993) ("[A] plaintiff may not avoid an otherwise valid arbitration provision merely by casting its complaint in tort. The touchstone of arbitrability in such situations is the relationship of the tort alleged to the subject matter of the arbitration clause."); *Acevedo Maldonado v. PPG Indus*., 514 F.2d 614, 616 (1st Cir.1975) ("The contracts provide for arbitration of 'any controversy or claim arising out of or relating to this Agreement or the breach thereof.'  Broad language of this nature covers contract-generated or contract-related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort[.]"); *Filson v. Radio Advertising Marketing Plan, Inc.*, Civ. No. 07-3219 (ADM/JSM), 2008 WL 682100, *8 (D. Minn. Mar. 7, 2008) (holding that arbitration provision encompasses tort claims where such claims are "founded on the contractual relationship").[8]   *See also Roth*, 941 So. 2d at 500 (defamation claims encompassed by arbitration clause); *Royal Caribbean Cruises,* 664 So. 2d at 1109 (claims for defamation, fraud, and business interference encompassed by arbitration clause).

Nonetheless, Spice argues that arbitration is inappropriate, because it is not the most efficient means of resolving the disputes at hand.  Spice points out that New Foresight and

---

[8] Spice cites *Genesco, Inc. v. T Kakiuchi & Co., Ltd.*, 815 F.2d 840 (2nd Cir. 1987), and *Altshul Stern & Co. v. Mitsul Bussan Kalsha, Ltd.*, 385 F.2d 158 (2nd Cir. 1967), for the proposition that conspiracy claims are not encompassed by broad arbitration clauses.  Both cases, however, held the opposite, that conspiracy claims *are* encompassed by arbitration clauses where they are related to the underlying contract claims.

SanDisk are not signatories to the 2004 Agreement and, therefore, would not be part of the arbitration.  It also argues that arbitration with Old Foresight would be unjust and prejudicial to it, because Old Foresight is now defunct, while New Foresight and SanDisk continue to profit from sales to Spice's customers.

Spice's concerns are insufficient to avoid arbitration.  The FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Pro Tech Indus., Inc. v. URS Corp.*, 377 F.3d 868, 870 (8th Cir. 2004) (emphasis in original) (citing *Dean Witter Reynolds, Inc. v. Byrd*,  470 U.S. 213, 218 (1985)).  *Accord* Fla. Stat. § 682.02 (arbitration agreements "shall be valid, enforceable, and irrevocable…."). [9]

Accordingly, the Court recommends that Spice's claims against Old Foresight be arbitrated pursuant to the 2004 Agreement.  In the meantime, the Court recommends that Spice's suit against Old Foresight be stayed pending that arbitration.  *See* 9 U.S.C. § 3.

**B.**    **New Foresight - Merits and Arbitration**

New Foresight requests that the Court dismiss Spice's claims against it on their merits under Rule 12(b)(6).  Alternatively, New Foresight requests that Spice's claims against it be arbitrated under the 2004 Agreement, despite the fact that it did not sign it.

**1.**    **Merits**

Spice's claims against New Foresight survive a motion to dismiss.  The crux of New Foresight's dismissal argument is that none of Spice's claims involve sufficient allegations of misconduct against it, but rather stem from Old Foresight's misconduct.  Even if such were the

---

[9] Notably, Spice' Complaint requested arbitration in Hennepin County.  Perhaps its greatest concern with arbitration is arbitrating only with Old Foresight, the defunct corporation.  As discussed below, that concern may be alleviated by the Court's recommendation that New Foresight accompany its predecessor to arbitration.

case, Spice has explicitly alleged that New Foresight was fraudulently created to avoid paying commissions to Spice under the 2004 Agreement. *Complaint*, ¶ 36, 44-47. Spice further alleges that New Foresight is, therefore, liable for Old Foresight's debts and obligations under a successor liability theory. *Id.*

Although a corporation is generally not liable for the debts and obligations of its predecessor, successor liability is found in certain circumstances. *See e.g, J.F. Anderson Lumber Co. v. Myers,* 206 N.W.2d 365, 368 (Minn. 1973) (successor liability appropriate where: 1) the purchasing corporation agrees to assume predecessor's debts; 2) the transaction amounts to a consolidation or merger; 3) the purchasing corporation is merely a continuation of the selling corporation; 4) the transaction is entered into fraudulently to escape liability for debts; or 5) there is inadequate consideration for the sale or transfer). *See also Bernard v. Kee Mfg. Co.*, 409 So. 2d 1047, 1049 (Fla. 1982). Spice's allegation that New Foresight was fraudulently formed to avoid the obligations of Old Foresight is one such circumstance. Spice, therefore, adequately states a successor liability claim against New Foresight. *E.g.*, *Soo Line R. Co. v. B.J. Carney & Co*, 797 F. Supp. 1472, 1483 (D. Minn. 1992) (MacLaughlin J.) (denying motion to dismiss on successor liability issues where such issues raised fact questions inappropriate for 12(b)(6) dismissal).

## 2.   Arbitration

Because Spice's claims against New Foresight are not subject to dismissal at this juncture, the Court turns to New Foresight's alternative request that Spice arbitrate its claims against New Foresight.

Ordinarily non-signatories are not bound by arbitration agreements. *E.g.*, *Air Line Pilots Ass'n v. Miller*, 523 U.S. 866, 875 (1998). However, a non-signatory can enforce an arbitration

clause against a signatory where:  1) "the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration may evisceration of the underlying agreement between signatories be avoided," or 2) "the signatory to a written agreement containing an arbitration clause 'must rely on the terms of the written agreement in asserting [its] claims' against the nonsignatory."  *CD Partners*, 424 F.3d at 798.  *See also Filson*, 2008 WL 683100 at *8.[10]

Here, both circumstances exist.  The non-signatory, New Foresight, is attempting to enforce an arbitration clause against a signatory, Spice.  The relationship between New Foresight and Old Foresight, the signatory Defendant, is alleged to be very close, and New Foresight appears to concede as much by requesting inclusion in the arbitration as alternate relief. Moreover, Old Foresight is now defunct.  Therefore, if New Foresight is excluded from the arbitration, the underlying arbitration agreement would be eviscerated, since Old Foresight is no longer operating.

Moreover, Spice must, and clearly does, rely on the 2004 Agreement to bring its claims against New Foresight.  Spice's claims against New Foresight are primarily, if not solely, based on its allegations that New Foresight was specifically and fraudulently formed to avoid Old Foresight's obligations under the 2004 Agreement.  As such, it does not appear to allege New

---

[10] The test is very similar under Florida law, under which a non-signatory can enforce an arbitration clause against a signatory where:  1) claims against the non-signatory arise out of or relate to the agreement containing the arbitration clause; or 2) allegations of concerted action between the non-signatory and one of the signatories to the contract containing the arbitration provision exist.  *Rolls-Royce PLC v. Royal Caribbean Cruises LTD*, 960 So.2d 768, 771 (Fla. Dist. Ct. App. 2007) (citations omitted).  Application of the Florida factors would not vary the result recommended above.

Foresight's liability independent of its contract-based claims against Old Foresight. Consequently, Spice must rely on the 2004 Agreement to make claims against New Foresight.[11]

The Court, therefore, recommends that Spice's claims against New Foresight be arbitrated along with those against Old Foresight under the 2004 Agreement.

## IV.    CONCLUSION

Old Foresight's motion to compel arbitration should be granted.  Spice's claims against Old Foresight are subject to arbitration, because each of them stems from the 2004 Agreement containing a broad arbitration clause.  New Foresight's motion to dismiss Spice's claims on the merits should be denied, because Spice adequately pled New Foresight's successor liability. New Foresight's alternate request to compel arbitration of Spice's claims against it should be granted, because those claims are predicated on the 2004 Agreement and the relationships between the Foresight Defendants and Spice are closely intertwined.

## V.    RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

A.    The Foresight Defendants' motion to dismiss (Doc. No. 2) be **GRANTED IN PART AND DENIED IN PART** as follows:

1.    Foresight Marketing Group, Inc.'s motion to dismiss be **GRANTED** to the extent it requests that the Court compel arbitration of Spice's claims against it under the Federal Arbitration Act, 9 U.S.C. § 4, and **DENIED**

---

[11] This situation, where a non-signatory, New Foresight, is attempting to enforce an arbitration provision against a signatory, Spice, differs from a situation where a signatory, such as Spice, attempts to force a non-signatory, such as New Foresight, to arbitrate.  Courts look much less favorably on the latter scenario.  *CD Partners*, 424 F.3d at 798.  ("It matters whether the party resisting arbitration is a signatory or not….").  Here, we have the opposite situation, a willing non-signatory attempting to compel a signatory to arbitrate.

**AS MOOT** to the extent it seeks Fed. R. Civ. P. 12(b)(6) dismissal on the merits.

    2.      Foresight Marketing Partners, Inc's motion to dismiss be **GRANTED** to the extent it requests that the Court compel arbitration of Spice's claims against it under the Federal Arbitration Act, 9 U.S.C. § 4, and **DENIED** to the extent it seeks Fed. R. Civ. P. 12(b)(6) dismissal on the merits.

B.     Spice's claims against Foresight Marketing Group, Inc. and Foresight Marketing Partners, Inc. be **STAYED** pending arbitration under the Federal Arbitration Act, 9 U.S.C. § 3.

Dated:  April 29, 2008

                                  s/ *Jeanne J. Graham*

                              ————————————————

                              JEANNE J. GRAHAM
                              United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by **May 9, 2008**.  A party may respond to the objections within ten days after service.  Any objections or responses filed under this rule shall not exceed 3,500 words.  The District Court shall make a de novo determination of those portions to which objection is made.  Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.  Unless the parties stipulate that the District Court is not required, under 28 U.S.C. § 636, to review a transcript of the hearing in order to resolve all objections made to this report and recommendation, the party making the objections shall timely order and cause to be filed within ten days a complete transcript of the hearing.